IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| Chauncey A. Williams,<br> Plaintiff, | )<br>)<br>) |
| v. | ) 1:10cv1290 (TSE/TCB) |
| Gene Johnson,<br> Defendant. | )<br>)<br>) |

<u>MEMORANDUM OPINION</u>

Chauncey A Williams, a Virginia inmate proceeding <u>pro se</u>, filed this action pursuant to 42 U.S.C. § 1983, alleging cruel and unusual punishment during his incarceration due to unconstitutional conditions of confinement at Nottoway Correctional Center ("NCC"). On June 10, 2012, defendant filed a Motion for Summary Judgment accompanied by a supporting brief and affidavits. By Order dated December 5, 2011, defendant was ordered to file a supplemental brief in support of his Motion for Summary Judgment. Defendant filed the supplement brief on February 3, 2012 and provided plaintiff with notice and opportunity to file responsive materials, as required by Local Rule 7(k) and <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975). Plaintiff filed a response captioned as a "Motion for Summary Judgment Renewal." For the reasons that follow, defendant's Motion for Summary Judgment must be granted.

        I.  **Background**

Plaintiff alleges that he has been subjected to cruel and unusual punishment due to unconstitutional conditions of confinement at NCC. Am. Compl. 10-14, ECF No. 6. First, plaintiff alleges that no one inspected or cleaned the ventilation system in the general pod area or the individual cells from July 16, 2010 through October 16, 2010. <u>Id.</u> at 10. According to plaintiff, the allegedly poor ventilation caused him to suffer nausea and headaches. <u>Id.</u> Plaintiff also alleges that the drinking water at NCC frequently smells of "sewage" making it "impossible to consume." <u>Id.</u> at 11. Additionally, plaintiff states that from August 27, 2010 until October 13,

1

2010, he was housed in a fifty-four-square-foot cell with no in-pod or outdoor exercise. Id. at 11-12. Plaintiff also asserts that NCC has deprived him of "basic sanitation" because he is an indigent inmate and NCC provides him with only a small quantity of toothpaste, shampoo, and other hygiene items for a thirty-day time period. Id. at 12. Lastly, plaintiff states that cell temperatures have risen to over 100 degrees for a period of fourteen hours. Id. at 13. It is unclear whether this occurred only once or on numerous occasions.

At all times the only defendant named in connection with these claims has been the former Virginia Department of Corrections ("VDOC") Director, Gene M. Johnson. Plaintiff alleges that defendant Johnson is liable in his supervisory capacity because he gained actual or constructive knowledge of the alleged constitutional violations through letters plaintiff addressed to defendant Johnson. Therefore, at this juncture, the critical issue before the Court is whether the letters filed by plaintiff were sufficient to render defendant Johnson liable for the alleged constitutional violations under the theory of supervisory liability.[1]

It is undisputed that several letters from Congressman Robert "Bobby" Scott were mailed to defendant Gene M. Johnson. Ex. A; ECF No. 30-1; Letter in Supp. Pl.'s Mot. Summ. J., ECF No. 46. All of these letters were identical and stated "enclosed is correspondence from my constituent Chauncey A. Williams." Id. The letters were merely transmittal letters, meaning that they indicated that a letter from plaintiff was enclosed but did not contain any substantive statements. Id. The dates on the transmittal letters range from February 2007 to September 15, 2010. Id. Plaintiff has provided a copy of the substantive letter allegedly enclosed with the transmittal letter in only one instance. Letter in Supp. Pl's Mot. Summ. J. at 2, ECF No. 46. However, the letter is dated July 2, 2007, and concerns issues plaintiff experienced at

---

[1] Plaintiff was allowed to proceed on his claim of supervisory liability because on at least one occasion this Circuit has held that the receipt of a letter describing continuing unconstitutional conditions of confinement may suffice to establish personal knowledge on behalf of a supervisory individual. See Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985).

2

Augusta Correctional Center. Id. Thus, his letter does not relate to the claims at issue in this action because it was mailed prior to plaintiff's transfer to NCC in July 2010. See id.; see also Am. Compl. at 10 (stating that plaintiff arrived at NCC on July 16, 2010).

It also uncontested that all mail addressed to defendant Johnson was delivered directly to Johnson's assistant and not to Johnson. Woodhouse Aff. at ¶ 7, ECF No. 44-2. The assistant opened, read, and logged all of Johnson's mail. Id. at ¶ 4. If the mail was from an inmate the assistant would log the inmate's name and prison number, the current institution of confinement, the nature of the complaint, the date, and the person to whom the letter would be forwarded for handling. Id. The assistant would then forward the original letter to the appropriate office or facility for handling. Id. at ¶ 5. Due to the large volume of inmate letters addressed to Johnson, the assistant did not keep copies of the letters. Id. at ¶ 7. It is undisputed that defendant Johnson did not personally review letters addressed to him, and has no recollection of reviewing, reading, or otherwise having knowledge of any letters from plaintiff regarding the conditions at NCC. Johnson Aff. at ¶ 4; ECF No. 44-1; Woodhouse Aff. at ¶ 7.

It is further undisputed that from July 2010 through January 2011, defendant's assistant logged five letters from plaintiff which were addressed to Johnson. Woodhouse Aff. at ¶ 6. Four of the letters were complaints about NCC, and they were forwarded to Charlene Davis at the Central Regional Office on August 3, 2010, August 23, 2010, September 20, 2010, and October 22, 2010, respectively.[2] Id.; see also Encl. A (copy of the log). The assistant's log reflects the name of Congressman Bobby Scott on the log entry for the letter forwarded to the Central Regional Office on September 20, 2010. Woodhouse Aff. at ¶ 7; Encl. A.

Plaintiff also submitted as an exhibit a letter from the Commonwealth of Virginia Department of Labor and Industry which is addressed to NCC warden Bryan Watson. See Br.

---

[2] According to the log the other letter concerned plaintiff's security classification and the assistant forwarded it to Gary Bass in the Classification Unit on January 18, 2011. Woodhouse Aff. at ¶ 6.

3

Opp'n. Ex. B., ECF No. 30-2. It is undisputed that the letter informed Warden Watson that plaintiff had complained about the ventilation at NCC. Id. The letter stated that the Department had "not determined whether the hazards, as alleged, exist" at NCC, but directed Warden Watson to respond to the letter within five working days. Id. Plaintiff alleges that when a "notice of this magnitude is initiated the warden should have submitted an incident report to the Central Regional Office." See id. at 7. As a result, plaintiff asserts that defendant Johnson would have knowledge of the letter. Id. However, plaintiff submits no evidence to support his supposition and the record is devoid of any evidence indicating that policy required Watson to inform Johnson of the letter or that the letter was actually forwarded to or brought to the attention of Johnson.

Lastly, it is uncontested that the Virginia Department of Corrections ("VDOC") has established policies and procedures governing the sanitation, maintenance, air circulation, the potable water source, and temperature at all of its facilities. Aff. Johnson at ¶¶ 5-9; ECF No. 26-1. NCC is required to comply with these mandatory policies. Id. VDOC also has an operating procedure for indigent offenders which provides indigent inmates with hygiene packets once per month. Id. at ¶ 7; Encl. A, ECF No. 26-1. Whether an inmate qualifies as indigent is determined by the amount of funds available to the inmate during the previous month. Johnson Aff. at ¶ 7; Encl. A. at 1-2. NCC is also required to comply with this operating procedure. Finally, inmates are provided with out-of-cell exercise opportunities based upon certain criteria, including their security classifications. Johnson Aff. at ¶ 9.

It is undisputed that Johnson recalls no occasion during his tenure as VDOC director on which he was notified that NCC was out of compliance with the applicable mandatory policies and operating procedures. Id. at ¶ 10. Furthermore, Johnson was never personally involved in the daily operations of NCC. Id. at ¶ 10. Rather, his duties were to oversee the overall administration of VDOC and implement VDOC's policies and procedures. Id. at ¶3.

4

## II. Standard of Review

In reviewing a motion for summary judgment, courts must view the facts in the light most favorable to the party opposing the motion. Porter v. U.S. Alumoweld Co., 125 F.3d 243, 245 (4th Cir. 1997). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A "genuine" dispute as to a material fact is present "if the evidence is such that a reasonable jury could . . . return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When a motion for summary judgment is made and supported by affidavits, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). Unsubstantiated, conclusory claims without evidentiary support are insufficient to satisfy a non-moving party's burden on summary judgment. Carter v. Ball, 33 F.3d 450, 461-62 (4th Cir. 1994); Goldberg v. B. Green & Co., 836 F.2d 845, 848 (4th Cir. 1988).

## III. Analysis

### A. Cruel and Unusual Punishment based on Conditions of Confinement

To establish a claim of cruel and unusual punishment, plaintiff must allege and prove (1) an objectively serious deprivation of a basic human need, one causing serious physical or emotional injury, and (2) that prison officials acted with deliberate indifference to plaintiff's needs. Farmer v. Brennan, 511 U.S. 825, 834 (1994); see Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (defining serious deprivation as evidence of a serious medical and emotional deterioration attributable to the challenged condition). The first prong is an objective inquiry and the second prong is a subjective inquiry. See, e.g., Gholson v. Murry, 953 F. Supp. 709, 718-19 (E.D. Va. 1997). As to the first, objective prong, the Supreme Court has stated that

5

"[t]he Constitution, 'does not mandate comfortable prisons,' and only those deprivations denying 'the minimal civilized measure of life's necessities,' are sufficiently grave to form the basis of an Eighth Amendment violation." Wilson v. Seiter, 501 U.S. 294, 298 (1991) (citing Rhodes v. Chapman, 452 U.S. 337, 347, 349 (1981)). And, as to the second, subjective prong, the plaintiff must prove that defendant was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [defendant] must also draw the inference." Farmer, 511 U.S. at 837. Deliberate indifference is "something more than mere negligence . . . but something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Id. at 835.

In this case, it is unnecessary to decide whether plaintiff's allegations of a poor ventilation system, unclean water, lack of opportunity to exercise, deprivation of basic sanitation and hygiene materials, and excessive heat constitute an objectively serious deprivation of basic human needs because plaintiff fails to establish that the defendant had the requisite knowledge of the alleged constitutional violations to be held liable for them. Plaintiff does not argue that Johnson was personally aware of the specific facts giving rise to the complaint or that Johnson was personally involved in the alleged constitutional violations. Rather, plaintiff asserts that Johnson is liable in a supervisory capacity because he gained either actual or constructive knowledge of the alleged violations through grievances and letters filed by plaintiff. In order to establish supervisory liability under § 1983, a plaintiff must demonstrate:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Id. at 799 (citations omitted).

6

Applying these principles of supervisory liability, plaintiff's claims must fail because the record establishes that the defendant did not have actual or constructive knowledge of the alleged constitutional violations. First, the majority of transmittal letters sent from Congressman Bobby Scott to defendant Johnson were sent prior to plaintiff's transfer to NCC and therefore could not have served to put defendant Johnson on notice of the allegations at issue in this action. See Ex. A at 1; ECF No. 30-1; Letter in Supp. Pl.'s Mot. Summ. J., at 3-13, ECF No. 46. Further, it is uncontroverted that defendant Johnson did not personally read any of the letters addressed to him or have any knowledge of the contents of those letters. Johnson Aff. at ¶ 4; ECF No. 44-1; Woodhouse Aff. at ¶ 7; ECF No. 44-2. The letters were read, logged, and forwarded to the appropriate office by Johnson's assistant. Woodhouse Aff. at ¶¶ 4-5. Furthermore, Johnson attests that he has no recollection of having independently received or read letters from plaintiff or from third parties on behalf of plaintiff. Johnson Aff. at ¶ 4. Accordingly, the record fails to establish that defendant Johnson gained actual knowledge of the alleged constitutional violations through letters filed by the plaintiff.

The record also fails to establish that defendant Johnson acquired constructive knowledge of the alleged violations through the letters addressed to him. First, plaintiff has only submitted transmittal letters and has not submitted the letters that allegedly were forwarded by the transmittal letters. See Ex. A; Letter in Supp. Pl.'s Mot. Summ. J. Nor does defendant have copies of these letters. Woodhouse Aff. at ¶ 7. Therefore, on the record before the Court, it cannot be established that the letters which were transmitted to Johnson actually concerned the allegations in this action. As such, it cannot be concluded that the letters addressed to Johnson were sufficient to provide him with constructive knowledge of the alleged constitutional violations at issue in this action.

Moreover, assuming arguendo that Johnson gained actual or constructive knowledge based on the letters, the record does not establish that Johnson's response was so "inadequate as

7

to show 'deliberate indifference' or tacit authorization" of the alleged constitutional violations. To the contrary, the record establishes that each of the letters was forwarded to the regional office for appropriate handling. Woodhouse Aff. at ¶¶ 5-6, ECF No. 44-2; Johnson Aff. at ¶ 5, ECF No. 44-1. Accordingly, defendant's actions were not sufficiently inadequate to amount to deliberate indifference.

Additionally, plaintiff's cursory allegation that defendant Johnson also may have gained knowledge through a letter sent to Warden Watson from the Commonwealth of Virginia Department of Labor and Industry must also fail. Br. Opp'n. at 7, ECF No. 30. Plaintiff's unsupported allegation that Warden Watson was required to notify the regional office of the letter, which would have put defendant Johnson on notice, is insufficient to defeat summary judgment. Likewise, plaintiff's allegation that Johnson gained knowledge of the alleged violations through the inmate grievance system must also fail. The record establishes that defendant Johnson was not involved in the daily operations of NCC. Johnson Aff. at ¶ 7; ECF No. 44-1. Moreover, defendant Johnson's duties did not include responding to inmate grievances, and nothing in the record indicates that defendant Johnson had knowledge of any of plaintiff's grievances.[3] Johnson Aff. at ¶ 3; ECF No. 26-1.

Lastly, and significantly, it must also be noted that at no time during defendant Johnson's tenure as VDOC Director was NCC found to be in violation of any of the VDOC policies and procedures governing sanitation, maintenance, potable water, air ventilation, temperature control, or distribution of hygiene materials to indigent inmates. Id. at ¶ 10. Therefore, it appears that even if plaintiff's claims were addressed on the merits, the outcome of this case would not differ.

---

[3] Even if defendant Johnson had responded to plaintiff's grievances, his claim would likely fail as a matter of law because inmates do not have a constitutionally protected right to a grievance procedure and no liability exists under § 1983 for a prison administrator's response to a grievance or appeal. See Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994); Brown v. Va. Dep't Corr., No. 6:07-CV-00033, 2009 WL 87459, at *13. (W.D. Va. Jan. 9, 2009).

Accordingly, based on the record before the Court, summary judgment must be granted in favor of defendant Johnson.

## IV. Outstanding Motions

Also before the Court are plaintiff's Motion for Default Judgment, Motion for Preliminary Injunction, and Motion to Renew Request for Summary Judgment. Because defendant's Motion for Summary Judgment must be granted, plaintiff's outstanding motions must be denied as moot.

## V. Conclusion

For the foregoing reasons, defendant's Motion for Summary Judgment must be granted, and summary final judgment must be entered in his favor. An appropriate order and judgment shall issue.

Entered this 29th day of February 2012.

Alexandria, Virginia

/s/
T. S. Ellis, III
United States District Judge